On the Merits.
NICHOLLS, J.
Plaintiff appeals from the judgment of the civil district court rendered upon a writ of habeas corpus refusing his prayer to be given the care and custody of his daughter Norma, then in the care and custody of the defendant, the mother of the child.
In his application for the writ relator alleged that in the year 1S98 he obtained from the district court for the parish of Vermilion a judgment of divorce against his wife, Paula Trahan, and decreeing to him the care and custody of his minor child, Norma; that the defendant, in violation of her promise, and in contempt and disregard of said judgment, spirited away said child, and from that time to the present had concealed from him the whereabouts .of herself and her child; that in the interim she married one Charles Adolph, who was, at the time of the application, dead; that relator, after years of fruitless search, had finally ’located his. said divorced wife in the city of New Orleans, and found said child in her custody, which was wholly illegal, relator being en *317 titled thereto. He applied for and obtained from the court a writ of habeas corpus. Defendant answered the writ. After pleading a general denial, she averred that she was married to plaintiff herein when a mere girl 17 years of age, and that two children were born of the marriage, to wit, Norma and Robert; that she knew nothing of the pretended judgment referred to in plaintiff’s petition, as she was absent in Texas with her two children at the time it was purported to have been rendered in December, 189S.
That she has had the care and custody of her aforesaid minor children ever since they were born, and that the boy Robert, died years ago in Texas with meningitis, in spite of the devotion and care she had bestowed upon him; that the plaintiff herein had failed to contribute to the support of either of her children for over 10 years; that he had made no request upon defendant to surrender same; that she had reared and taken care of her daughter, Norma, had educated her without a particle of assistance from the plaintiff herein, who was now endeavoring to secure possession of the aforesaid girl.
That respondent lived over two years in New Iberia, with her husband, Charles Adolph, and the said minor child, only 20 miles distant from Abbeville, where plaintiff resided; that he knew of their presence in New Iberia, but made no request or demand for the custody of said child; that she had never concealed from him the whereabouts of said child, but, on the contrary, he had known that she was in New Iberia with the child for many years; that six years ago, when her grandmother died, she went to Abbeville, a small place, to settle up her grandmother’s succession, in which she had an interest, and there saw the plaintiff, who knew of her presence, but made no ertort whatever to secure the child, but, on the contrary stated he would wait until the child was grown and then take possession of same.
That after she had heard of this judgment of divorce she married Charles Adolph, in Galveston, Tex., who died in this city two days ago; that the plaintiff herein knew of her marriage with Charles Adolph; that Adolph visited the village of Abbeville, in Vermilion parish, where he saw the plaintiff, and the plaintiff made no complaint or request of him for the custody of the said minor child; that the child was now 15 years of age and had never seen her father, the plaintiff herein, since she was an infant in the arms; that she did not know him, and has a violent dislike for him on account of his treatment of her, and his failure to contribute, in any manner, shape, or form, to her support or education, or to communicate with her in any manner; that she owned her own home in this city, was well able to provide and take care of her said daughter, and had shown a mother’s devotion and care in educating and rearing her said daughter; that her said husband, if any rights he had under the said judgment, had forfeited same by his failure to exercise same as the judgment was more than 10 years old, and was now prescribed as to that portion granting him the custody of the child; and that by his laches and neglect in permitting defendant to retain the custody of the child from infancy, undergo all the hardships and expense incident to rearing and taking care of the child, defendant having nursed her through all the ills incident to childhood and a severe spell of typhoid fever, which cost hundreds of dollars, besides great anxiety, worry, and care, he should be denied the care and custody of his minor child.
■ In view of the premises, respondent prayed that plaintiff’s petition be dismissed,' at his cost, and for general and equitable relief.
After trial of the issues, the district court discharged the writ, assigning the following reasons for the judgment:
“After listening to the argument of counsel for the relator in this case, his contention for *319 the custody of this child being based upon the case of Prieto v. Convent of Mercy, the court considers that that was a case where the court was called upon to determine the question as to whether a child can set up its will as against its parent, and the court, of course, maintained the parent’s authority over’ the child. This court does not consider that that case is applicable to the facts disclosed in this case. As the court understands in this case, the husband in I89S (the court reserves the right to correct any error as to dates) obtained a judgment against his wife, giving him the care and custody of the two minor children, Robert, who is dead, and the present child, Norma. At that time they were living in Abbeville, in the parish of Vermilion. It seems that before the divorce was granted the wife had left Abbeville, gone to Jeanerette, and from Jeanerette had gone first to Texas, and then, evidently, came to New Orleans.
“Now, after the lapse of 10 years, more than 10 years, the husband brings this suit to obtain possession of this minor child, Norma. It appears that the husband, after the divorce! married, and lia.s a wife now living, both of them residing in the parish of Vermilion.
“The mother of the child, after llie divorce was obtained, in 1S98, formed a second marriage, and had lived with her husband until a few days ago, when he died here, in New Orleans, within the last three or four days. Now it appears from the evidence that during all this time the husband had not provided for this child, or done anything whatever for its support, or for its education.
“The court is satisfied, if this husband had loved this child, and was actuated by kindness and affection for the child, or concerned about its welfare, that in all these years he could have located this child, either in New Iberia, where the mother of the child lived for two years, or in New Orleans, where they had been living for some years. It will not do for him to escape the responsibilities of a father or his duty to hunt up this child by simply stating that he told his lawyer, Mr. Gordy, to locate the ■child.
“Now, while the law and that judgment of divorce gave him the care and custody of that child 10 years ago, it seems to me that he has certainly slept upon his rights, and that it is neither law nor justice for him to quietly sit down with that judgment in his hands and wait until this mother had taken care of this child in sickness and in health, raised her, and brought her up until she was nearly 15 years of age. It was his duty, if he relied upon the judgment giving him possession of the child, to have executed that judgment then and there, or at once, or to satisfy this court that he had used every diligence that a reasonable man would to obtain possession of this child, and that the record fails to show that he did.
“The evidence shows that this lady had relatives (a number of them) in Abbeville, that she resided in New Iberia, and that she was here in New Orleans. The plaintiff in this suit is a railroad man, a station agent, and it seems to me that if he had wanted this child, when it was his duty to have taken and reared and educated her, he would have enforced that judgment then and there, and found out where this child was and taken her. It is too late now, years afterwards, to take this child away from the mother. So on that ground this court could rest its decision; but it prefers to rest it upon a higher principle, and that is the happiness and the welfare of the child herself, and with the reading that I have been able to do upon this subject I think that the English and American doctrine is that the welfare of the child should be considered, and not the welfare of the parents. With that view, after talking to the child herself, and hearing the evidence of how she had been raised, how she has been educated, and her present condition, I am absolutely satisfied that she will be happier and have better care taken of her in the hands of the mother that bore her than in the hands of her father, who has neglected her for 10 years, or in the hands of a stepmother’, to whom he would probably take her-. The writ is dismissed.”
The position taken on the argument of this ease by appellant furnishes a key to the course of conduct which he has pursued touching the child since he obtained a judgment of divorce against his wife. 1-Ie evidently believes that the judgment fixes absolutely and irrevocably (or at least until set aside or modified by some direct proceeding) his right to take, at any moment, custody of the child from its mother; that he is called upon to exercise no parental duty in respect to her unless he chooses to perform them, and when he chooses to do so. I-Ie contends that no prescription runs upon a judgment such as he has obtained; and that utter neglect and indifference on his part for 10 years of all his parental duties and obligations does not weaken or interfere in the slightest degree with his right to go forward at any moment to claim the child under a writ of habeas corpus, as his rights are in full force as to that matter. The right given to one or other of the spouses, by the judgment of court granting a judgment of separation from bed and board or a judgment of divorce, to have the care and custody of the children of *321 the marriage, is not an irrevocable decree. It is subject to modification at any time.by changes in the existing conditions. AYhat may have been right and proper under conditions yesterday may become all wrong by situations as existing to-day, and what should be done in the premises is submitted greatly to the discretion of the judge acting advisedly under all the circumstances of the case, when .the matter is submitted to him for decision ; and among the most important circumstances to' be considered by him is the welfare and happiness of the child.
The rule of the civil law in that respect does not differ from that in the common-law states.
In. passing upon the question of the welfare and the happiness of the child, the conduct of one or both of the parents towards her is a proper and legitimate factor in the deter-' mination of the same. If there be reason to think that the father’s efforts to obtain the custody and care of the child are not on account of consideration by him for her well-being and happiness, but are referable to some motive other than this, the judge should not hesitate, but should leave the child where she has been found to be happy and satisfied and well cared for in every respect.
Appellant’s course of conduct has not been such as to impress us with the belief that he is acting in this matter from affection for the child or regard for her good and happiness. 1-Ie has no word to say against the child’s remaining where she is. He makes no complaint against the child’s surroundings. We have no reason to believe that they are not such as they should be. The testimony in the record negatives the allegations of the petition that the wife spirited the child away and that she has concealed ■ her whereabouts from her father.
AYe think, under the evidence, that the father knew, or could have easily known, exactly where to find his child during all these years, and that for some reason or other he did not care to take any action in the premises. AYe think the mother herself is entitled to'consideration under the circumstances of this ease. She has faithfully performed, alone and unassisted by her husband, all her duties in sickness and in health to the child for the last 10 years. Plaintiff’s demand for the child is rested solely upon his naked, absolute legal rights as father, and is presented to us under very unfavorable circumstances. That demand has been met by the mother by way of a defense which we are of the opinion she had a right to urge when the issue was raised.
TYe think the trial judge properly refused to take the child from her mother under the conditions shown.
The judgment is affirmed.